Judge Lagoa, Judge Hull, and I are pleased to welcome you to the last day of our panel sitting here in Jacksonville. It's been a good week and we've enjoyed our time here. You know the lighting system, when the yellow light goes on, that means that your time is starting to draw to a close, so start wrapping up. If we take you beyond the red light, don't With that, we'll start with case number 22-11153, United States v. Jeffrey Boone, Ms. Lowenthal. And before you start, I want to acknowledge that you're court-appointed and I want to thank you on behalf of the court for your service to Mr. Boone and to us as well. We really do appreciate it and we know you've been doing it for a fair amount of time and doing it very well, so thank you. Good morning, your honors. May it please the court, I'm Cheryl Lowenthal and I represent the appellant Jeffrey Boone. We are here today on a most difficult and unpleasant case involving three counts, abduction of child pornography, distribution, and possession. These cases don't get much worse than this and not try to sugarcoat it, Mr. Boone did molest his own four-year-old child and he videoed it on his phone and he was in the process of sharing it with someone on a child porn internet site in Wisconsin who happened to be an FBI undercover agent. So, law enforcement was notified in Northwest Florida immediately and they found out who this person was, communicating with this person in Wisconsin. They found out his address and they were able to get a search warrant and they were able to go to the home that very day and I guess to stop any further incidents that may have occurred. What happened here is inexcusable and despicable, however, my only issue on appeal is the sentence that was imposed. The sentence was 70 years, 840 months. It was the top of the guidelines range. We are all well aware that a guidelines sentence within the range is presumed to be court had the discretion to impose that sentence, but I think if we just take one step back and just look at it as human beings, putting a person away for 70, he was 32 years old at the time of the sentencing, he's now I think about 34, and looking at 70 years incarceration, we have become a country of over incarceration and over punishment. How much time is sufficient? How much time is enough to meet all of the goals and functions of sentencing, which do include punishment and indeed a long prison sentence is a punishment, but whatever happened to second chances and rehabilitation and I would assume that he is in a facility with other sex offender inmates because even what they say honor among thieves, even drug dealers and bank robbers will attack child offender, child porn offenders in custody, so there is some, they have to be segregated from other types of inmates for their own safety, so I would assume, I'm sorry. I take your argument and I think, you know, I was a district judge, Joel was too, and we saw unfortunately a number of these cases and I think the argument has a little bit more weight when it comes to people who are convicted of child pornography offenses but don't act out on other things. That is correct, Your Honor, but many, many . . . In a case like this, I mean, this district judge thought basically that he needed to keep Mr. Boone away from society for life given what he had done and I think Congress has given district judges the power to do that in this case and the guidelines allowed that sort of a sentence. I agree, Your Honor. That's correct and that's the circuit precedent and that's under the rules and regulations of the sentencing guidelines, that is correct, but 70 years, I mean, and he's going to age, they get various physical complaints, things like blood pressure and cholesterol and glucose issues and the BOP is really notorious for not taking very good medical care of their people in their custody, which is very sad, so and I realize that there's . . . I don't have much authority to present to you today because of the circuit precedent and the rules and regulations of the sentencing guidelines, however, this is a case where life imitates art to catch a predator situation and fortunately, he was stopped . . . well, actually before the search warrant was executed, I'm sure that he was stopped when his wife arrived back home with the two little boys and it was a heinous, despicable act that he did. I don't want . . . I don't think I need to discuss the gruesome details if . . . You don't need to. Thank you very much. You really don't need to. Thank you. I think let's get to what could be possible arguments. We have the invited heir because the former trial counsel, not you, were you the . . . you weren't the . . . No, no, no, I was not. He said the guidelines were calculated correctly. It doesn't mean you had to give a within-guideline sentence, but that's correct. I just want to make sure I understand. No, that is correct. She . . . that was her . . . She did not object because she . . . . . . based on circuit precedent, yes. Yeah, she said it was calculated properly. She also said and agreed that that enhancement applied because the conduct had happened, at least the evidence that the search warrants revealed without getting into testimony, but at least the search warrant evidence showed it was over a two-day period, so that was so-called the pattern under that. So, is there any argument, legal argument . . . Only . . . . . . the counsel did agree the guidelines were calculated correctly. Is that . . . am I correct? She did, Your Honor. Okay, and she agreed the enhancement applied. There was no objection to the enhancement. Because of circuit precedent, and I'm going to . . . I thoroughly agree she may have had a basis for it. I'm just trying . . . if we have to write something, I'm trying to make sure I'm not making a mistake because you know the reasonableness. Yes, ma'am. Yes, Your Honor. There's no procedural unreasonableness here. It's substantive reasonableness. That is correct. Okay. Number one, the judge did find a pattern of it. I don't think you're correct that it was over two days. It was the same day. When that search warrant was executed the same evening, that . . . Yes, but two of the images had certain dates on it, and some . . . the video had another date, and the statement was that it occurred over two days at sentencing, and they all agreed to that. Whether that's true or not, I don't know, but that's just what they agreed to. If that is what the record says, then we must abide by the record. But the fact is that when the search warrant was executed, Mr. Boone was in the same clothing, which was pine trees design on it, and the same navy blue sheets were in the bedroom in the background. That is why I thought that it was all the same day, and perhaps his video . . . the phone . . . maybe his phone had the wrong date on it, and then again, maybe it was . . . if the record says two days, then I concede to the record. I'm not sure exactly what the record said. I just know the lawyer agreed it had occurred over two days in two separate places. That was what the problem was. I thought that she did not, but that she agreed that the pattern of activity enhancement was appropriately applied. She agreed to that, too, I believe, but I'll check that to make sure I'm correct. Even assuming that the issue was preserved or that we're here on plain error review and not invited error bar, in a situation where you have the sexual abuse of a minor, why isn't abuse occurring twice in the same day a pattern? Because it was one incident. He might have turned off the video and then turned it back on, but my understanding . . . and I could have misunderstood the record, but that it was . . . they were both wearing the same clothing, they were in the same room, and it was just a period of time while his wife had left the home, and I just . . . They may have been close in time, but they were different instances of abuse. There were two separate activities that were recorded. Sure, and in terms of figuring out . . . I mean, that enhancement exists, and it's severe, because committing that sort of conduct more than once is deemed to be really, really, of abuse over a couple of hours. The severity, it seems to me, may be there. He stole the innocence from this child, he abused her trust, and the judge used his military . . . his identity as active military as an aggravating factor instead of when it usually, customarily, would be a mitigating factor. And in all my research, I couldn't find any case where this However, I did find that sentencing transcript that I submitted as supplemental authority for the position that even in a case where a person used his position as active military, and he used a military aircraft to smuggle drugs from Columbia into the United States, the judge in that case, Northern District of Florida, the late Roger Vinson, who did have a distinguished military career himself, did not hold the military service against the client in that case. And here the judge did hold it against him, and his lawyer attempted to contact three of his friends from the military for somebody to please write a letter on his behalf, and one of those people was someone whose life he saved in Iraq, and none of those people would write a letter for him. They wouldn't put it on paper and sign it. But you know, once you give, and I think it's, in terms of policy, a good thing to give judges discretion in terms of how they sentence individuals so they can take into account the personal characteristics and everything else. But once you give them discretion, different judges exercise the discretion differently. I'm not preaching to you. I'm just saying that what may be mitigating in one person's eyes may be either neutral or partially aggravating in somebody else's eyes. Thank you, Your Honor. I see that my time has expired, but I would... You don't need to respond if you don't want to. I would just suggest that maybe the court would consider suggesting a rehearing in bank to determine whether maybe there should be some way to look at these very, very long sentences to determine whether maybe they are over sentences. Thank you. And before you... I found it in my notes that, just so you know, that the sentencing, in his own sentencing memorandum that was filed, Mr. Boones, because they were arguing you should take into account the fact that the videos were recorded, quote, over a two-day span involving the same victim and advised that his counsel did not object to the addition of the point. Actually, they were using the two-day span and the same victim as a mitigator that this didn't occur over a long period of time. It was only over two days because they had one video of a very... one type of conduct and they had a video of another type of conduct. So that's why there's lots in the record saying it was over a two-day period because that's what the video showed and it was trying to show it was a short time frame. Thank you, Your Honor. I will concede that the record is the record. All right. Thank you very much, Ms. Lowenthal. Mr. Davies. Good morning. May it please the Court. Robert Davies for the United States. With regard to the first issue in the briefs, the invited error doctrine does preclude the defendant's claim that the district court improperly imposed the pattern of activity enhancement. I was going to point out what Judge Hull just found at her defendant's sentencing memorandum, document 42, page 2. She says the defendant recorded three videos over a two-day span and the offenses occurred at different times. She points out it's a close time but different times. The reason there's no evidence from the government, of course, is because they didn't oppose the objection, the enhancement. The enhancement would apply. The court can't reverse it based on the invited error doctrine even if you got past that. There was no error under Isaac and Fox and there was also no plain error. Just for my own edification, to the extent you know, are there cases that have decided whether or not the pattern enhancement in 4B1.5 applies to incidents with the same victim on the same day separated by hours? Fox comes pretty close to holding exactly that. Not exactly. It's not hours. The language of Fox is they have to be distinct. All that's required is the incidents have to be independent and distinguishable from each other. Of course, in this case, even with this record, assuming you didn't have invited error, I mean, she said, the defense lawyer said it was over a two-day span, so it's not one day. Again, the reason the government had evidence, the reason we didn't put it on at the sentencing hearing was because they didn't oppose the enhancement. With regard to the substantive reasonableness of the sentence, the district court imposed a reasonable sentence. We are, of course, in sentencing guidelines reasonableness terrain. We're in abusive discretion terrain. The district court imposed a sentence within the . . . It was a guideline sentence. The district court imposed . . . The range was 360 to life? The range was life. Life, okay. It was capped at 840 months because of the statutory maximums. Yeah, but he stacked the statutory maximums. Was he required to stack the statutory maximums? Well, the guideline range was . . . Nothing's required now with Booker, but . . . Right, but you understand my question. Yes, he was . . . I agree the guideline range was life. Yes, ma'am. But the problem was each offense had a statutory maximum of 30, I believe. I think it was 30. Okay. It's whatever adds up to 180, 40. So when I say he stacked them, he ran them consecutive. Was he required to run them consecutive? I'm having a little trouble with the word required, Your Honor. Okay. No, she wasn't required to do it. Right.  Nobody's required to do anything. Okay, that's a bad question. All right. I see why you're challenging that inappropriately. So did she have . . . or he, I don't know who . . . It was Judge Rogers. It was she. Did she have discretion not to run them consecutively? Yes, under Booker, she had a . . . she could have given a sentence. That's what I thought. So there was some exercise of considerable discretion here.  Yes, Your Honor. So her best argument . . . I tried to think about what you could possibly argue, and that was the only thing I came up with, that there was possibly . . . you wouldn't have been required to run them all consecutively. Right. I mean, obviously she did. She did it for the reasons she articulated. Right. But she does make a point. I mean, maybe 40 years and this would be done, or whatever, you know. In addition . . . It would be without the enhancement, and it would be 300 . . . it would be kind of a 360. Right. Which would be 30 years, which is . . .  . . . pretty . . . Right. Hopefully by 50, you know, whatever. Although I've had cases in state court with 50 and 60-year-olds in this situation. Right. In fact, a bunch of them. So, you know, who's to say? I think, as Judge Johnson implied, a judge certainly could have given a 30-year sentence in this case, and the government wouldn't appeal. And if we did appeal, we'd lose. I mean, there's a wide range of discretion. Right. But Judge Rogers chose to give a guideline sentence, and it was within her discretion to do that. There's a wide range of discretion with sentencing reasonableness. She considered the factors. She considered the totality of circumstances, 3553A. And to reverse her, you've got to say her sentence was unreasonable. And the law there is very broad discretion to the district court, and she imposed a reasonable sentence. If you follow the guidelines, which we know are advisory, the guidelines tell district judges in this scenario to stack. Yes, sir. That's correct. Like you said, she could have refused to stack or declined to stack by varying . . . Right. . . . and saying, I'm not going up to a life sentence for you. I am going to a 30-, 40-, 50-year sentence for you. And, therefore, I'm only stacking up to that point, and I'm not stacking any further. It's just that she chose not to do that as an exercise of her discretion. That's correct, Your Honor. And you can only, as you all know, you can only reverse her if she abused her discretion, and she didn't, given the totality of the record here. Thank you. Okay, Mr. Davies. Thank you very much. A very quick rebuttal. In 2003, there was a bipartisan task force in Congress on long sentences and how long is long enough. And you had Sally Yates on the Democrat side, and you had Trey Gowdy on the Republican side. And they made findings that some sentences are just too high and unreasonable that are imposed. We warehouse people for so many years, 10 years, 20 years. 20 years in prison, you know you're punished. And punishment has become apparently the only function or goal for sentencing anymore. There's very little rehabilitation. I assume that he's in a facility where there will be sex offender treatment and perhaps some psychological counseling. But, I mean, how much time is really reasonable? And I just ask the court to think about that and to perhaps consider an in-bank review of how much time is too much time. And Judge Hall is correct, and you, Your Honor, that there was no reason on three counts to impose the maximum on each count consecutively and still come in at 840, which was 70 years. It was just unreasonable. His life is ruined. He's lost his family. He's lost his position in the military. He's lost everything. She essentially gave him a life sentence. She did. We all understand the severity of that, and we take it seriously. We understand. Thank you. That is the thrust of my argument. Okay. Thank you both very much.